May it please the Court. Your Honors, I would like to reserve three minutes of my time, if that's okay. Of course. This case comes to this Court... Counsel, would you just identify yourself for the record? I'm sorry, Your Honor? Would you identify yourself for the record? Oh, I'm sorry. My name is Ira Kurzban. This case comes before this Court on an order dismissing plaintiffs' APA and due process claims that challenged severe sanctions by the agency. We believe the decision below should be reversed and remanded because for APA review, this is not one of those rare instances where review does not apply. In fact, there were detailed regulations used by the agency to sanction the plaintiff's sponsor, and this case falls into a long line of cases, including Pinnacle Armor, which Your Honor Judge Bybee wrote for the Court, Spencer, which Judge Nelson wrote for the Court, Benno, and Keating. All of these cases either involved detailed regulations or even less. For example, in Pinnacle Armor, this Court found that interim guidelines were sufficient as a basis for law to determine that there's law to apply and therefore the APA applies. So if we agreed with you, what would go back to the district court? What would the district court be considering? I think the district court, first of all, has to have the record before it. And one of the problems here, Judge Okuda, is that the court did not have a full record. There are many things missing in the record. There are other things that probably shouldn't be in the record. And the judge needs to consider a full record before him. We also believe there's a due process issue, which raises questions of what this record should look like, whether it should just be a paper record. Even though it says that these are lesser sanctions, if Your Honors look at the affidavit of my client, the owner of Essay. Essay, by the way, is a company that deals exclusively and solely with the Department of State. So if it loses its license, the entire business goes under. Counsel, can you point to any law that governs the evidence or factors that the Office of Exchange Coordination and Designation must consider in finding that Essay violated one of the Exchange Visitor Program's regulations? Is there any law that governs what they must consider?  First of all, under section 62.50A, it says it's in their discretion. But their discretion must be first determined by whether or not there's a finding of a violation. And they went through detailed findings, which we can test, of course. But then, even after making those detailed findings under the regulations, they must determine whether objectively there is a serious the seriousness and the nature of the violations would result in their discretionary decision to impose those sanctions. But this standard doesn't regulate how an office determines whether a visitor speaks sufficient English and what evidence it must rely on. Moreover, there are other findings that the office may make, such as whether the sponsor's action compromised national security goals that are not related to any regulations. How do I don't see any specific regulations guiding how the office makes a finding. All agency decisions may be reviewed to determine if they are arbitrary or capricious. Well, the criteria are, number one, they have said that we have violated specific regulations. Meaning, for example, that this person did not speak sufficient English for purposes of this program. Courts look at those things all the time. Courts make determinations as to whether or not, based on this record, there's sufficient evidence to support that claim. That's what the arbitrary and capricious standards are about. And indeed, there are specific cases, even one from the Central District of California, deciding an English language issue specifically. We didn't mention that in the brief because it didn't come up, but Lopez versus Estru at 210 Westlaw 2674432 actually analyzes whether or not the person speaks English well enough to get a government benefit. But the Let me just ask, excuse me for the interruption, I'm posing on your time, but hypothetically, would the officers finding that S.A. conducted this program to compromise nationals in such a way that compromises national security, would that be reviewable by the court? It might be, depending on the circumstances, but that issue is not before the court because there are four separate criteria for determining when S.A. should be sanctioned. That criteria, which is number four, was never invoked here. The only ones that were invoked against S.A. were number one, that it violated the regulations, and number three, that in fact, it engaged in omissions or in the safety of this person. Those issues, by the way, are the traditional kinds of issues that a court should decide. Judge Ikuda asked me, one of the things that I think should be decided on remand here is what commission means, what omission means, because the government has acknowledged in their brief, and I just want to point this out, as did the agency at page nine. They determined that S.A. did not directly participate in the harassment of the exchange visitor and responded appropriately when informed of the situation. So the question is, what does omission or commission even mean under these regulations? Let me ask you about the due process claim on the motion to dismiss. So if we agreed with you on the review under the APA, then you would get post-deprivation process, because it would be a review of the State Department's determination. Now does that, would that, you're also making a pre-deprivation due process claim. You're saying that the State Department didn't do enough. Would the fact of having post-deprivation review eliminate the due process claim you're making? I don't think so, and just two points about the due process. In Pinnacle Armor, Judge Bybee pointed out that a record determination was sufficient in that case. We don't believe it is sufficient in this case, and I think it goes to the pre- and post-deprivation issue as well. What do you think you're entitled to that you didn't get? I mean, we've said that in most cases, you're not entitled to an evidentiary hearing. You're not entitled to cross-examining witnesses or having a neutral arbiter. That you have to have notice and opportunity to be heard, which you did have. So what's missing? Okay, what's missing here is the gravamen of the claim here is that this trainee, 31-year-old woman, was threatened and harassed. And that seems to be the gravamen, and the government says- That's not what you were penalized for, though, right? I mean, the specific violations had to do with she didn't have enough English and she was there for labor only and other things. Well, but the third one, which I think actually was the most important that motivated them to give the sanctions, was the claim that we engage in omissions or co-omissions that resulted in harming the safety of this person. Effectively, it's a failure to supervise. Your client is being held strictly liable for what ACO did or didn't do. Well, that's the question. I think the question is, do these regulations allow for strict liability, number one. But number two, the reason why that's important here, Judge Bybee, and I think it's different than Pinnacle Armor, is that all of that is based on testimony. That is, it's based on this woman's claim that there were 30 instances of harassment. It's based on law enforcement officials' claims that there were some problems involved. And so testimony, in some sense, becomes important here. And that's why, I'm sorry, Judge, I'll get to the point. That's why I think something more than just a paper record, maybe less than a formal trial, but maybe some discovery that allows us to take the testimony of individuals. Because testimony in this particular case seems to be very critical and due process under Matthews is a flexible analysis. We don't have to say it's either all a formal hearing, a trial, or just a paper record. Did you get a summary of what the State Department's claims were based on? What the, I'm sorry? Did you get a summary from the State Department as to the basis of their- Well, in here they put the, no. I mean there were no, there's no facts in this record as to those 30 claims of harassment. All they said was there were 30, that she told them there were 30 instances of harassment. There was not one piece of evidence here about that harassment. Who did it, when it happened, why it happened. So they didn't provide you any summary of what their charges were based on? Or you think they did provide a summary, but it was too general? Right, they provided very little information. But they did provide some, but it wasn't sufficient in order to have an intelligent response. Did the State Department's judgment rest on those 30, on the 30 rule violations? Yes, that was one of their findings that they made in the ultimate determination that we engaged in acts of omission or co-omission. Are you entitled to records from DHS related to a T visa? That's an interesting question, because this involves a T visa, and normally- It looks like DOS didn't have, the Department of State didn't have the basis for the Department of Homeland Security's judgment on the T visa. It only had the inference to be drawn from the fact that it had been issued. Right, but they interviewed this woman themselves for two hours. We had no notes about that interview. I'm sorry, who's they? I'm sorry. The Department of State or the Department of Homeland Security? The Department of State interviewed her for two hours, no notes about that. The Department of State says in their own decision that they received information from her at the beginning. We never got that information. If we thought that this case was reviewable under the APA, I assume that you'd like us to remand it to the district court? Well, I think we'd like to remand it, but it would be very helpful on the due process issue if the court could set what those contours are, that is that it's not just- Since there's a lot of fact finding that never went on in the district court, wouldn't it just be best just to send all of that back? I think it would. The question is, yes, I mean, I think the district court can do the Matthews analysis in the same way I suppose that this court could, but it might save some judicial resources if this court provided the outline of what that Matthews analysis would result in. You have two minutes and 40 seconds left. You'd like to reserve it. Thank you. Ms. Klein? May it please the court, Elisa Klein for the United States. I'd like to address the two central points that plaintiff is making. One is that the notice of intent, which the court has in the record, did not give assay enough information to put on a meaningful defense. And the other is that it was impermissible for the Department of State to consider, among other evidence, the fact that this exchange visitor received from the Department of Homeland Security a human trafficking visa as a result of her treatment in this program. Counsel, if you're asking us to review that, are you conceding the reviewability? No, Your Honor. I want the court to understand what the district court was looking at. It was not second guessing the State Department's determination that in its discretion, lesser sanctions were warranted. But the district court emphasized, it was a narrow ruling, and it said that there is no claim that regulations or statutes were violated. There's no claim that the State Department did not make the requisite findings. And the court, due process, did address and reject the argument on the merits. So most of the arguments are procedural, so they may be related to both the APA claim and the due process claim. But I just want to make sure the court understands, in fact, what happened, and it is reflected in the record. So the notice of intent, Judge Kutta, you asked, did they have a summary? There was a detailed summary of three different and independent bases for the type of sanctions at issue here, which are the lesser sanctions. There's no licenses revoked, no suspension. This is essentially a reprimand, the requirement to submit a corrective action plan, and a reduction by 15% in the number of forms, the special State Department forms that plaintiff receives that allow foreign visitors to seek a visa for entry into the United States. So that's what we actually have here. And the process that is provided under the State Department's regulations is specific to that type of lesser sanction. So again, going back, if the court looks at the notice of intent starting at page 60 and onward in the excerpts of record, the court will see a quite detailed description of the bases that the State Department had for determining that these lesser sanctions were warranted with attachments. This all sounds like a defense that the government's actions were substantively reasonable. And that sounds like a substantial evidence inquiry. Well, two answers. One is that I'm trying to address the due process claim, which was rejected on the merits. The other is that in this particular context, I'm not sure there is a practical difference between saying the specific claims that the plaintiff raised here are not reviewable for the reasons set out by the district court. Or that we have the quantum of evidence, substantial evidence, as then Justice Scalia explained. Those strike me as very, very different, counsel. I'm kind of surprised. No, again, because to say that we briefed in the alternative that this was not an arbitrary and capricious determination and- The district court's ruling seems to me to be very broad. That almost anything involving the State Department is going to be within its discretion is therefore going to be unreviewable. To the contrary, your honor. The district court said, following this court's precedent, I look at the issue of reviewability in the context of a particular case. And it is important to note that the plaintiff is not- You mean in another case involving this program that might be reviewable? No, in the context of the nature of the sanctions and the claims that are being made. So effectively, the district court had to have reached a categorical judgment about Department of State dealings with this particular program. And I'm not talking about ASSE, I'm talking about the broader program. If I may, your honor, I'll read the district court excerpts of record page eight, which is also page eight of the district court's opinion. It is important to note here that ASSE is not alleging that the State Department did not make the required findings, but were deciding to issue sanctions, or relied on a factor not available for consideration under the regulations which the court would have the power to review. And some citations. Indeed, as evidenced by the multiple letters that the department sent to ASSE outlining its reasons for issuing sanctions, the department did make such findings. Rather, ASSE is alleging that the State Department reached the wrong conclusion in making these findings and gave way to the wrong evidence. But whether, for example, the exchange visitor spoke sufficient English, whether the third parties complied with the regulations, these are not matters for the district court under the governing regulation to determine. Those were matters that the State Department reserved to its own judgment. Because of the foreign policy implications that are inherent in all aspects of this program. As Judge Posner emphasized in the Buell case, which also involved ASSE, these regulations are for the protection of the foreign visitor. And that's everything about them, both substantive requirements that she'd been given genuine training, which would have been the training program that's in the record, front office business management, not being used just to fulfill a labor need to do unskilled labor in the kitchen. And why couldn't we review that for substantial evidence? I mean, we review everything else for substantial evidence. Again- I mean, what makes it different? If the question is, why can't we just affirm on the alternative ground that the State Department made the findings and attached supporting evidence, and that's good enough, that the court, we urge that in the alternative. And the court doesn't even need to decide the question of reviewability in the abstract. So you're saying if we found that it was reviewable under the APA as to whether the department made the correct findings, we could uphold the district court on some other ground and say there was substantial evidence. Or alternatively, I presume, we could send it back to the district court and say you were wrong in saying you couldn't review these issues. You should be reviewing it for substantial evidence. So- I mean, I don't think that the court, in fact, in the excerpts of record, could conclude that yes, of course, there was substantial evidence. But I just want to make clear what assay, like the court has half the record for a reason. There is an administrative record. The court has what the State Department found and its supporting documents. The only reason the court doesn't have the plaintiff's submissions before the State Department and its exhibits is because the plaintiff chose not to put those before the district court and only chose to put in the State Department's half. And what I want to emphasize, again, going back to the due process procedural claim that we had no way to know what the charges were against us and no way to rebut them. In written documents, there were no restrictions. If assay had wanted to put in an affidavit from the restaurant, from ACO, basically anyone saying, no, her work was consistent with her training program. She did work 40 hours. Well, we actually don't know if they did put that stuff in there, do we? Well, I know. And if the court would like, I have no objection if the court would like to see what they actually submitted before the State Department. But it seems to me that that's only relevant if the government's willing to concede that this is reviewable. Because I regard the question of a 701A2 as a pretty substantial argument by the government that the courts have no business whatsoever looking at any of this. Well, again, I'm addressing the due process and the APA claims at the same time. I just want to make clear, because we're talking about due process, that they had notice of the specific claims and every opportunity to put in evidence to rebut it. They chose, they did not have, I assume, affidavits denying any of the allegations. What do we do with the evidence about the T visa? Did the State Department know about the basis for the T visa? The State Department knows about the fact of its issuance. And I think both parties agree that the State Department, this office of the State Department, as opposed to the Criminal Investigation Office, is not permitted access to the underlying evidence. It would be extraordinary to conclude that the State Department, in overseeing this exchange visitor program, which is solely to enhance foreign relations,  to say that they cannot even consider the fact that she, in compliance with the DHS regulations, had to submit credible evidence that she was in the country as a result of severe trafficking in humans and that she was the victim of severe trafficking in humans. I mean, this is all, we're not talking about criminal investigations. And one of the conditions of a T visa, if you look at the DHS regulations, is that she cooperate with federal law enforcement in investigating human trafficking. This is, like, the idea that this program, which is specifically designed to enhance foreign relations, that the State Department couldn't even consider a human trafficking visa, that would really be shocking. Well, I don't think the question is whether they can't, whether they have to look at it. The question is whether ASSE is entitled to look at the basis for that. Well, again, ASSE is not, by statute, ASSE cannot see the submissions that she made to the Department of Homeland Security. But what they are told are, again, to be clear, what they have in front of them is, here is the training plan, ASSE, that you prepared. Here are the emails between ACO and the exchange visitor that talk about six, you know, workdays a week, with, like, far more than 40 hours of work, an explanation that we know the 40 hours were on the J visa application, but the actual hours are different. Nothing that looks like training in the J visa sense, the sense of this program. It's all about setup, cooking, you know, baking crepes, cleanup. It's this on its face. ASSE had abundant information to come in if they had any evidence to say that's not true. Her program was genuine. She really, you know, did what it said in her training program. They could have put that before the State Department. So now what we're talking about is, in a, like, that alone is a basis for the imposition of lesser sanctions. There is a separate finding that ASSE, through omission, because it's responsible for anything that ACO does, committed an act or omission that endangered the health, safety, or welfare of a foreign visitor. And on that, they were told, she said, there were 30 instances of harassment, that her family was threatened, that she was threatened with immigration consequences. That's in the notice of intent that the State Department gave to the plaintiff. They are not entitled to the underlying law enforcement evidence, and the State Department could not give it to them. And the idea that the State Department, therefore, is precluded from taking into account the fact that its sister agency charged with these determinations made these findings, has no support of any statute, regulation, or case. That really would be extraordinary. If we thought that this was reviewable, do we send it back to the District Court? We think it's unnecessary. That's why we urge the- Well, since the District Court didn't really do that analysis. I think I'm repeating my answer to Your Honor's question. We think the District Court came quite close to saying, you know, to asking, given the nature of your claims, what is your claim? You're not saying they didn't make the findings. You're not saying they didn't attach evidence. You're not saying, they may be saying that the State Department ignored assay submissions, but it's not true. You can see it in the actual statement in which they imposed sanctions. It's like the District Court saying, I've got nothing. You're not pointing me to an error, a violation, or any basis to set aside the determination. Again, if their argument is you were foreclosed from looking at the T visa application, that's just wrong. If their argument is I had no way to know what the claims were against me, that's foreclosed. If you just read the notice of intent, they had a lot of detail about those claims. Well, I guess if assay was able to show, for example, before the District Court that the visitor spoke fluent English, the District Court said in its opinion, I, District Court, cannot review that. That is solely for the State Department. And as I understand it, if in fact there was evidence that the visitor spoke fluent English and there was no evidence that her English was inadequate, the court could determine if it was reviewable that that finding was not supported by substantial evidence. Now, the District Court thought it could make that sort of finding, if I'm reading its opinion correctly. I believe the District Court was more careful than that. What the District Court said was, you're asking me to second guess the evidence on which the State Department relied. There's a footnote in the District Court opinion that says assay's compliance officer admitted that based on its contemporaneous conversation with the exchange visitor, we were as surprised as you state were to find that she didn't have adequate English to participate in the program. We told ACO that it was negligent in the screening of this visitor and that serious consequences would occur if this were to be repeated. So the District Court actually looked at the notice of intent and the ultimate findings and the discussion of assay's submissions, which the court didn't have the actual submissions, but it had the discussion of them. And said, I've got nothing, I can't second guess the determination reached by the State Department on the basis of the evidence it cited and its discussion of assay's contrary submission. So I don't think it was this abstract level, like ruling by the District Court, that said because this involves foreign affairs, I have no role. It's really not what the District Court said. How would you distinguish the Cower case? I'm sorry? How would you distinguish the Cower case? I'm not familiar with it by the name. What is the case? I'm sorry, it was in the briefs. Well, let's, how would you distinguish Pinnacle? Okay, I may just not know Cower by that name. But I mean, Pinnacle, again, because these questions under this circuit's precedent are reviewed in a very concrete way, Pinnacle, I mean, this court said there were standards set out in those interim regulations against which a district court could decide, was there substantial evidence? And the court also said nothing about that review would compromise the purposes of the program. But here, if you think very concretely about what they're saying, live witnesses, if they are saying, we get to cross-examine Ms. Amari, that has extremely serious- Well, but that would all go to a due process question. Well- The question is whether they're entitled to cross-examination wouldn't be a question of APA review. We could decide under Matthews versus Eldridge that they weren't entitled to cross-examination, they were only entitled to a review on the printed record. Okay, and so if they were to say, the Department of State cannot consider the trafficking visa, and I think they put that under the rubric of the APA, I'm not sure what their APA claim is, because they had, there was evidence attached by the State Department and discussed in the bindings, and so their claims seem to be entirely procedural. If they're saying, State Department, you and your administration of the exchange visitor program cannot consider a human trafficking visa, well, of course that has direct implications for foreign affairs. We have to protect the foreign nationals in our charge, and it doesn't matter that ESEA wasn't directly implicated in drug mistreatment. If they partner with foreign companies like ACO or host organizations, the regulations make very clear that any problems are imputed to them. Like, that's, it's their responsibility. So, are you saying that the district court performed a review that was essentially the same as an APA review, even though the district court said it couldn't do that? And it didn't cite any of the standards that would be applicable in a 706 review. I think for practical purposes, the way the district court actually looked at what the claims were here, and when it said, it's important to note that you're not alleging that they didn't make the findings, if it all comes down to an argument that the State Department can't consider the T visa, well, that's just wrong. It's like, not everything goes into an administrative record and an informal adjudication, and certainly not law enforcement investigatory materials. Like, an interview about, with a potential human trafficking victim, you know, conducted by ICE, that's not, that's not something that the State Department would disclose. That's a law argument under the due process clause. You told the district court that it couldn't even think about this question. Well, I'm addressing, to some extent, the more refined version of the arguments they're presenting on appeal, but I understand why I think we're talking past each other. If they're claiming that the administrative record had fatal defects because, A, they did not have notes from... Let's suppose that they alleged that the Department of State was flipping coins to decide what kind of sanction they were going to impose. Well, again, this is where the district court wrote a narrow decision. It said, you're not claiming they're flipping coins. Right, but let's suppose that they would, because that's the next case that will come up here, and if we agree with the district court that this is barred by 701, A2, then you're home free. No, Your Honor, because if you write exactly what the district court wrote and say, it's important to note that the plaintiff did not say they're flipping coins, you know, that's not... You mean we might get to review the case where they did flip coins? That wouldn't be committed to agency discretion by law? We are not asking the court to decide any other case. The district court wrote a very careful opinion and said, it's important to note that plaintiff is not alleging that the State Department did not make the required findings or did not provide a process... Getting apart from this case and just asking about the program and the regulations, do I understand the government to be saying that APA review is appropriate? That the court could review a sanction that was imposed by the State Department on a participant in the program? And then you can quibble around the edges about what's suitable for review and what's in the discretion of the State Department, but the threshold question is whether the district court can review the State Department's sanctioned determination under this program and these regulations. I'm going to hedge deliberately because I do not want to prejudge cases that are different from this one. The district court said I could review an allegation that the State Department considered an impermissible factor or didn't consider a factor that it was required to consider. We are not taking issue with that for purposes of this appeal because it does not matter. I would want to leave open to the State Department if this ever really came up in a concrete context, the opportunity to reflect on whether there are nonetheless reasons that a court could not review a particular determination. But we are not asking this court to issue a broad ruling that says the imposition of sanctions or lesser sanctions under the rubric of this program is unreviewable, period. That's not what the district court said and it's not what we're asking for on appeal. Thank you. Thank you, Ms. Klein. Mr. Kerspan? I think the difficulty here is that the government's position, like the district court's position, is very confused in the sense that we all know what an administrative record is and if we don't, this court has said in Thompson, it consists of all documents and materials directly or indirectly considered by the agency decision makers and including evidence contrary to the agency's position. That's what an administrative record is. We don't have an administrative record in this case. When the government talks about and the judge talks about on the record, there is no record. There never was an administrative record here. We all know what an administrative record is and it's not the plaintiff's burden to put that forward as the government suggests. It's the government's burden. When there is an administrative case being reviewed for substantial evidence, the agency has the responsibility of putting together the entire record and presenting it to the district court. That never happened here. There is no administrative record. Counsel, if the State Department makes a statement which you directly oppose, do you have no obligation to submit your opposition to those statements? If the agency has evidence that is contrary to their position, for example, we know here that there was a co-worker with this trainee and the co-worker said everything was fine. She doesn't understand why this woman was complaining. She worked with her side by side. That was never in the administrative record because we have never had the administrative record. And we pointed out in our briefs, both in our initial brief and our reply brief, in detail as to what things were missing from the record, not only including the co-worker's but statements that were taken from the individual trainee, allegedly other documents that she presented to the agency. These may be documents which are helpful to us in a substantial evidence review. So the confusion here is this judge tried to do both things. He tried to say there's no judicial review at all, but I'm going to review what I have in front of me. But that's not the administrative record. So the government's claim that we should jump ahead and even if the jurisdiction is a little murky here, you should reach the result because there was evidence in the record is not accurate. There was no administrative record. The second thing, just very briefly, I just want to address Judge Okuda's question about post deprivation, which I never think I got to completely. And that was it would not help to have a post deprivation hearing here because one of the major problems that we face is if there's a finding, the agency will publish it. That publication, as stated in Mr. Gustafson's affidavit, which is in the record before the court, would be disastrous and would result in the company losing $1.9 million at least and having to fire many of its people in the office. So we would want some kind of pre-deprivation hearing. And again, the contours of that hearing, it doesn't necessarily have to be a full trial, but it should be something more than just the paper record. Thank you. Thank you. We thank both counsel for the argument. That concludes the oral argument calendar for the morning. The court is recessed until tomorrow. All rise.
judges: Nelson, Bybee, Ikuta